UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIM D. MARINO,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>  Defendant. | NO. C12-5136-JPD<br><br><br><br>ORDER |

Plaintiff Kim D. Marino appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

I.   FACTS AND PROCEDURAL HISTORY

At the time of her application, plaintiff was a 42 year-old woman with a high school education. Administrative Record ("AR") at 25. Her past work experience includes employment as a janitor and a customer services representative. *Id.* Although plaintiff was employed on a part-time basis until 2006, the work did not rise to the level of "substantial

ORDER - 1

1  gainful employment." Plaintiff was last gainfully employed in 2000. AR at 20. For purposes

2  of DIB, her insured status expired on April 1, 2006. *Id.*

3  On April 28, 2008, plaintiff filed a claim for SSI payments and DIB. AR at 18. She

4  alleges an onset date of July 12, 2000. *Id.* Plaintiff asserts that she is disabled due to

5  temporomandibular joint disorder ("TMJ"). Right Pes Plannus (flat foot); anxiety disorder and

6  depression. AR at 21.

7  The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 18.

8  Plaintiff requested a hearing which took place on February 19, 2010. AR at 33-70. On July 9,

9  2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her

10 finding that plaintiff could perform a specific job existing in significant numbers in the national

11 economy. AR at 18-27. Plaintiff's administrative appeal of the ALJ's decision was denied by

12 the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the

13 Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present

14 action challenging the Commissioner's decision. Dkt. No. 1.

## II.   JURISDICTION

16 Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

17 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

19 Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

20 social security benefits when the ALJ's findings are based on legal error or not supported by

21 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

22 Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

23 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

24 *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

ORDER - 2

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Marino bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

ORDER - 3

education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

ORDER - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On July 9, 2010, the ALJ issued a decision finding the following:

1. Ms. Marino meets the insured status requirements of the Social Security Act through March 31, 2006.

2. Ms. Marino has not engaged in substantial gainful activity since July 12, 2000, the alleged onset date.

3. Ms. Marino has the following severe impairments: Temporomandibular Joint Disorder (TMJ); right Pes Planus (flat foot); Anxiety Disorder; and Depression.

4. Ms. Marino does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that Ms. Marino has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires a sit stand option at will due to pes planus; no public contact; no job requiring more than occasional speaking; no hazards or heights due to use of narcotic pain medication; occasional use of foot controls due to pes planus; no climbing of ladders, ropes, or scaffolds; may frequently climb ramps and stairs, balance, bend, crouch, stoop, kneel, and crawl.

6. Ms. Marino is unable to perform any past relevant work.

7. Ms. Marino was born on XXXXX, 1958 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date of July 12, 2000 and 51 years old, defined as closely approaching advanced age, as of the February 19, 2010 disability hearing.[2]

8. Ms. Marino has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Marino is "not disabled," whether or not Ms. Marino has transferable job skills.

10. Considering Ms. Marino's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Marino can perform.

11. Ms. Marino has not been under a disability, as defined in the Social Security Act, from July 12, 2000, through the date of this decision.

AR at 20-26.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ failed to properly weigh the medical evidence?

2. Whether the ALJ failed to properly evaluate plaintiff's credibility?

3. Whether the ALJ relied upon improper vocational expert testimony?

Dkt. No. 15 at 1.

## VII.   DISCUSSION

A. <u>The ALJ Did Not Err in Her Treatment of the Opinion of Nurse Practitioner, Bonnie Acosta</u>

In an undated letter, Bonnie Acosta, FNP, prepared a "Narrative Report Regarding Kim Marino's Ability to Work." AR at 339. In the narrative, Ms. Acosta recounted some of plaintiff's prior medical history, and opined that she had limitations of activities that were

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

dictated by her "levels of anxiety, difficulty talking, poor concentration and chronic facial pain and distortions." Ms. Acosta opined that plaintiff's prognosis for recovery was poor, and this was unlikely to return. She concluded by stating "I do not believe that Kim Marino will ever be able to return to full time gainful employment. I consider her medically disabled and expect these current condition to last throughout the remainder of her lifetime." *Id.*

The ALJ noted the following:

> . . . Beyond those restrictions, however, reviewing and examining physicians consistently conclude Ms. Marino is capable of light exertional work. There is no treating physician opinion to the contrary. Similarly, the reviewing and examining psychologist opinion of record concludes Ms. Marino is mentally capable of working provided that there is no public contact, and there is no treating therapist or psychologist opinion to the contrary of this assessment.
>
> As stated previously, Nurse Practitioner Bonnie Acosta referred Ms. Marino for evaluation of depression and anxiety to "Dr." O'Neal. Ms. Marino sought no mental health treatment from any source after her visits with Mr. O'Neal ended a few months after they began. This fact undermines the extent of her psychological impairments. The cognitive testing conducted by examining Psychologist Dr. Villaneuva, his opinion and that of reviewing psychologists previously discussed at the third step of analysis, undermines Ms. Marino's contention that she is either psychologically disabled or that her psychological limitations preclude employment.
>
> . . . Unlike Ms. Marino's treating nurse practitioner Acosta, Drs. Jensen and Habjan have medical degrees, and thus their expertise is superior to that of a nurse practitioner. Ms. Acosta's opinion regarding Ms. Marino's physical and mental limitations is accorded much less evidentiary weight that physicians and psychologists, despite the treating relationship between Ms. Marino and Ms. Acosta.

AR at 24.

Plaintiff argues that the ALJ dismissed Ms. Acosta's opinions simply because she was a nurse, and this was improper. In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms

ORDER - 7

or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, she must provide "reasons that are germane," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Here, the reasons provided by the ALJ were more than simply "germane." First, because Ms. Acosta is not considered to be an "acceptable medical source," her opinion alone cannot establish the existence of a medically determinable impairment. SSR 06-03p, *available at* 2006 WL 2329939.

Second, State Agency physicians are considered "highly qualified physicians who are also experts in Social Security disability evaluation." *See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f) (2)(i); *see also* SSR 96-6p. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p. This is particularly true when they are also supported by the opinion of an examining physician. Although an ALJ should generally give less weight to the conclusion of a non-examining expert than the conclusion of an examining physician, a non-examining medical expert's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. *See Tonaypetyan v. Halter,* 242 F.3d 1144, 1149 (9th

Cir.2001). Substantial evidence that can support the conflicting opinion of a nonexamining medical advisor can include laboratory test results, contrary reports from examining physicians, and inconsistent testimony from the plaintiff. *See Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995); *Magallanes v. Bowen,* 881 F.2d 747, 751–52 (9th Cir.1989)

Here, Dr. Villanueva, who opined that plaintiff's receptive language was grossly intact, that she was alert and oriented, had no hallucinations or delusions, scored 30/30 on a mental status examination and was able to attend to detail well. AR at 274. He also reported she was doing well from a cognitive standpoint and, as indicated, had a mental status examination of 30/30. AR at 275.

Third, Ms. Acosta referred plaintiff to an unlicensed, unqualified counselor. The ALJ did not reject Ms. Acosta's opinions simply because she was a nurse. The ALJ provided appropriate and germane reasons for her findings, and did not err.

   B.  <u>The ALJ Erred in Her Adverse Credibility Determination</u>

The ALJ found plaintiff to be less than fully credible. AR at 23. As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).

Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, it is difficult to identify the reasons supporting the ALJ's finding. For example, the ALJ noted plaintiff "has relied entirely upon prescribed psychotropic medication to successfully treat her depression and anxiety. She has not participated in therapy by a licensed counselor or psychologist." AR at 21. It is unclear from this if the ALJ believes that plaintiff has no psychological impairments (which is untrue as recognized by the ALJ) or if the ALJ believed this was too conservative of a treatment to support plaintiff's claimed symptoms. The ALJ also noted that plaintiff testified that she was unable to leave her home alone. AR at 23. The ALJ fails to indicate whether she believes this is true or not true and why. The Commissioner argues that on the page before, the ALJ cited to one instance in which plaintiff was unaccompanied when going to a medical appointment. AR at 22. While the Commissioner seeks to make the correlation, the ALJ did not. Moreover, the one instance cited, if it was intended to apply, hardly condemns the plaintiff's statements about her difficulties in this regard. The ALJ also cited to plaintiff continuing to ride horses after her

ORDER - 10

accident. The Commissioner acknowledges this was a mistake by the ALJ. Finally, the Commissioner cites plaintiff's performance on tests administered by Dr. Villanueva that contradicts plaintiff's claims. This could be a legitimate basis for the adverse credibility determination, but not in light of error regarding horseback riding and the failure to specifically identify the evidence that the ALJ believes specifically undercuts plaintiff's claims. As discussed above, general findings are insufficient. On remand, the ALJ will review the issue of plaintiff's credibility in accordance with this opinion, and will reassess plaintiff's RFC in light of that review.

C. <u>The Reassessment of Credibility Requires a Review at Step Five</u>

Because the reassessment of plaintiff's credibility may impact plaintiff's RFC, the ALJ is directed to review the step five determination. In addition, as noted by plaintiff, although the ALJ found plaintiff could not perform work requiring public contact, the ALJ did not describe any limitations involving ability to deal with co-workers and supervisors. The ALJ should consider these limitations, if any, in her reassessment of plaintiff's RFC and subsequent hypothetical question to the Vocational Expert.

## VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's opinion.

DATED this 5th day of December, 2012.

*/s/ James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge